# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 21-01588 PA (KKx) | Date | September 30, 2021 |
|---|---|---|---|
| Title | Oscar Bryant v. Midwest Construction Services, Inc., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by Defendant Midwest Construction Services, Inc. ("Defendant"). (Notice of Removal ("Removal"), Docket No. 1.) Defendant alleges that this Court possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 ("CAFA"). (Id.) On September 21, 2021, the Court issued Defendant an order to show cause why the case should not be remanded for lack of subject matter jurisdiction, due to not meeting the amount in controversy requirement for CAFA. On September 28, 2021, Defendant filed a response. (Response, Docket No. 10.)

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by Congress and the Constitution. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. Id. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Federal subject matter jurisdiction may be based on diversity of citizenship pursuant to CAFA. See 28 U.S.C. § 1332(d)(2). The party seeking federal subject matter jurisdiction under CAFA must show that at least one plaintiff and one defendant are citizens of different states, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs. Id. "[T]he burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam). "The notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 788 (9th Cir. 2018) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 82 (2014)). However, "[i]f the amount in controversy is not clear from the face of the complaint, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id. at 788-89 (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015)). "Along with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01588 PA (KKx) | Date | September 30, 2021 |
|---|---|---|---|
| Title | Oscar Bryant v. Midwest Construction Services, Inc., et al. | | |

the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type-evidence related to the amount in controversy at the time of removal.'" Id. at 793 (quoting Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197. "[A] damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." Id. at 1199.

Defendant argues that it has satisfied its removal obligations because it is required only to make plausible allegations regarding the amount in controversy, rather than provide evidence in support. (Response at 2-3.) In support, Defendant cites to Arias, which states that a "notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." Arias, 936 F.3d at 922 (quoting Ibarra, 775 F.3d at 1197). However, Arias also recognizes that "evidence showing the amount in controversy is required '. . . when the plaintiff contests, or the court questions, the defendant's allegation.'" Id. at 925 (quoting Dart Cherokee, 135 S. Ct. at 551). The Court's order to show cause specifically questioned Defendant's allegations regarding the amount in controversy because the Notice of Removal appeared to rely on assumptions with no support. See Ibarra, 775 F.3d at 1197, 1199 (stating "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions" and "a damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them").

Defendant contends that the allegations in Plaintiff's Complaint, combined with extrinsic evidence, put into controversy an amount in excess of $5 million as required to support this Court's jurisdiction under CAFA. Using payroll records, Defendant supplies the following: since the beginning of the class period on July 26, 2017, Defendant employed approximately 832 putative class members, with an average hourly rate of $27.36 per hour and a total of 487,587.90 hours worked. (Removal ¶ 13.) The remainder of Defendant's argument relies upon a series of claim-specific assumptions based upon Plaintiff's allegations. The Court addresses each claim in turn.

First, Defendant argues Plaintiff's unpaid overtime wages claim amounts to $1,500,795.86 in damages. In reaching that total, Defendant relies upon the assumption that "Plaintiff is seeking at least three hours of overtime per putative class member for every workweek." (Removal ¶ 16.) Plaintiff's Complaint alleges Defendant had a "policy and practice of failing to pay overtime wages to Plaintiff and the other class members for all hours worked," that Defendant "intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members," and that "Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." (Removal Ex. A ("Compl.") ¶¶ 17, 41-42, Docket No. 1-1.) None of these allegations show that three hours of overtime per putative class member per workweek is reasonable. Defendant points to Torrez v. Freedom Mortgage, Corp., No. EDCV17-867 JGB (Kkx), 2017 WL 2713400, at *4 (C.D. Cal. June 22, 2017), where the court found similar allegations supported an assumption of "nearly 100% violation rate" and also used three hours of overtime per class member per workweek. Torrez, 2017 WL 2713400,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01588 PA (KKx) | Date | September 30, 2021 |
|---|---|---|---|
| Title | Oscar Bryant v. Midwest Construction Services, Inc., et al. | | |

at *4. According to Defendant, Torrez justifies use of "the conservative and accepted position of assuming three hours of overtime per class member per workweek." (Response at 5.) However, nothing in Torrez explains why the court found an assumption of three hours, rather than one hour or two hours, of overtime to be reasonable, and Defendant asserts no further facts to support such an assumption. As such, an assumption of three hours appears to be "pulled from thin air" rather than grounded in the allegations of the Complaint or any extrinsic evidence.

Second, Defendant argues Plaintiff's meal and rest period penalties claims amount to between $2,167,815.90 and $3,335,101.38.[1] In reaching those totals, Defendant relies upon assumed violation rates of either 65% or 100%. Defendant argues those violation rate assumptions are reasonable given Plaintiff's allegations that Defendant had a "policy and practice" of violations and "intentionally and willfully required Plaintiff and the other class members to work" through meal and rest periods. (Compl. ¶¶ 17, 59, 69.) Defendant does not explain why it is reasonable to assume that every single putative class member never received compliant meal and rest periods either every day or slightly more than every other day for the entirety of the class period. See Lacasse v. USANA Health Scis., Inc., No. 2:20-cv-01186-KJM-AC, 2021 WL 107143, at *3 (E.D. Cal. Jan. 12, 2021) ("USANA does not explain why it is reasonable to assume that . . . every associate qualified for and was consistently deprived of meal and rest breaks every week, fifty weeks per year for four years."). Allegations in the Complaint that the Defendant had a "policy and practice" of denying meal and rest periods is insufficient to support Plaintiffs' assumed violation rates. For example, in Akana v. Estee Lauder, Inc., the Court found Defendants' estimated violation rate of one noncompliant meal break and one noncompliant rest break per week per employee was not supported by the evidence. No. LA CV19-00806 JAK (PLAx), 2019 WL 2225231, at *6 (C.D. Cal. May 23, 2019). Defendants argued that the language in the Complaint supported "an assumed high violation rate because it [was] alleged that 'Defendants had a policy or practice of not providing' meal and rest periods." Id. at *7. The Court however, found that, as in Ibarra, Defendants "relied on an assumption rate of its alleged labor law violations that was not grounded in real evidence," despite having the burden of proof as to the amount in controversy. Id. (citing Ibarra, 775 F.3d at 1198). In Akana, the Court noted that the allegations in Ibarra also concerned those as to a "pattern and practice." Id. Nevertheless, the Ninth Circuit in Ibarra held that to support a claim as to the amount in controversy, the defendant must present evidence, not bare assumptions, as to the violation rate, and relying on this type of language in the complaint was not sufficient. Ibarra, 775 F.3d at 1199; see also Toribio v. ITT Aerospace Controls LLC, No. CV 19-5430-GW-JPRx, 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019) ("As is true in many such [wage-and-hour cases], Aerospace has attempted to read the vague tea leaves strewn about by Plaintiff in the Complaint, which in this instance is based upon Plaintiff's allegations of a 'pattern and practice' of various violations. From those meager offerings, Aerospace has attempted to supply violation rates . . . of one meal break violation and one rest break violation per week. . . . What Aerospace cannot do is simply pull violation rates out of thin air, . . . and conclusively state that they are 'reasonable inference[s]' about the most important variables involved in

---

[1] Defendant addresses the meal and rest period claims separately, but the Court combines these substantially similar claims for brevity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01588 PA (KKx) | Date | September 30, 2021 |
|---|---|---|---|
| Title | Oscar Bryant v. Midwest Construction Services, Inc., et al. | | |

the necessary calculations."); Koreisz v. On Q Fin'l Inc., No. CV 18-8662-MWF (SSx), 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018) ("Perhaps as a tacit acknowledgment that using 100% would not be reasonable [given a 'pattern and practice' allegation,] On Q Financial assumes a 50% violation rate. But neither of Ms. Spertina's declarations nor On Q Financial's Opposition offers any reason 'grounded in real evidence' as to why a 50% violation rate is appropriate.").

Defendant argues that Plaintiff's allegation that Defendant "intentionally and willfully required Plaintiff and the other class members to work during meal [and rest] periods" is more than a pattern and practice, and "would render every single meal and rest period in violation of California law." (Response at 5-6.) However, nothing about that allegation shows that Defendant intentionally and willfully required putative class members to work during <u>all</u> meal and rest periods, and Defendant fails to point to caselaw establishing such. See, e.g., Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) (finding 100% violation rate appropriate where Plaintiff alleged a "uniform policy or practice"); Archuleta v. Avcorp Composite Fabrication, Inc., No. CV 18-8106, 2018 WL 6382049, at *4-5 (C.D. Cal. Dec. 6, 2018) (finding 100% violation rate appropriate where Plaintiff alleged "a consistent policy" of violations); Sanchez v. Russell Sigler, Inc., No. CV 15-01350-AB (PLAx), 2015 WL 12765359, at *3 (C.D. Cal. Apr. 28, 2015) (finding 100% violation rate appropriate where Plaintiff alleged violation occurred "at all material times").

The alternative calculation of 65% Defendant provides again does "not take the place of evidence." Lacasse, 2021 WL 107142, at *3. This alternative calculation merely "demonstrate[s] how arbitrary [Defendant's] assumptions are: [it] show[s] how simple it is to manipulate the assumptions to produce totals larger or smaller than the $5 million threshold." Id. Defendant has not provided any evidence to suggest that a violation rate of once per day as opposed to once per week, or once per month, or once every few months, per class member, is reasonable.

Third, Defendant argues Plaintiff's minimum wage violations claim amounts to $370,566.80. Defendant again fails to ground this calculation. Defendant argues it is reasonable to infer Plaintiff is seeking at least 15 minutes of unpaid minimum wages per putative class member per workday from Plaintiff's allegation of "a policy and practice" and that Defendant did not pay for time spent driving, loading and unloading equipment, and putting on and taking off protective equipment. (Removal ¶ 23.) As discussed above, allegations of a "policy and practice" does not support a 100% violation rate. See Akana, 2019 WL 2225231, at *6. Further, Defendant provides no evidence showing that an assumption of 15 minutes is grounded in reality.

Fourth, Defendant argues Plaintiff's unreimbursed business expenses claim amounts to $1,218,970.00. Again, Defendant relies on Plaintiff's allegations of a "policy and practice" and that Defendant "intentionally and willfully failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs" including "personal cell phones, computers, and vehicles . . . as well as work boots and tools." (Compl. ¶¶ 17, 77-78.) Defendant estimates that $100.00 per putative class member per month is reasonable, given that "personal cell phone plans are commonly more than $100.00 per month," "costs for the use of personal vehicles could easily exceed $100.00-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01588 PA (KKx) | Date | September 30, 2021 |
|---|---|---|---|
| Title | Oscar Bryant v. Midwest Construction Services, Inc., et al. | | |

$200.00 per month," "personal tools could also easily exceed $100.00-$200.00 per month," and "a personal computer could also exceed $100.00 per month." (Removal ¶ 24.)  Defendant cites to a series of cases in support of those values, but these cases fail to establish that Defendant's estimations here are reasonable.  See Bowerman v. Field Asset Servs., Inc., No. 3:13-CV-00057-WHO, 2018 WL 2293076, at * (N.D. Cal. May 18, 2018) (holding jury award of unreimbursed expenses appropriate); Tehrani v. Macys W. Stores, Inc., No. LA CV15-07286 JAK (Ex), 2016 WL 1559085, at *7-9 (C.D. Cal. Apr. 18, 2016) (finding under removal standard that cell phone plan reimbursements require evidence supporting a 100% violation rate); Hughes v. Fosdick, 106 F. Supp. 3d 1078, 1083 (N.D. Cal. 2015) (finding under removal standard that mileage reimbursement requires evidence of both how many miles and the amount per mile that plaintiff seeks to recover); Alabsi v. Savoya, LLC, No. 18-CV-06510-KAW, 2019 WL 1332191, at *18 (N.D. Cal. Mar. 25, 2019) (finding under motion to dismiss standard that allegations of unreimbursed expenses are sufficient where pleading lists particular expenses required to be reimbursed); Rahmatullah v. Charter Commc'ns, LLC, No. EDCV 20-354 PSG (SPx), 2020 WL 4014746, at *5 (C.D. Cal. July 15, 2020) (containing detailed calculation of expenses supported by facts).  Defendant also argues that LaCross v. Knight Transp. Inc., 775 F.3d 1200 (9th Cir. 2015), shows its assumptions are reasonable.  (Response at 8-9.)  However, the reasonable assumption in LaCross was grounded in "the actual invoiced fuel costs . . . and the actual number of drivers . . . without relying on the assumption that each driver worked the entire year."  LaCross, 775 F.3d at 1203.  Defendant provides no such evidence of actual costs here, and the Complaint is devoid of any such allegations.

Fifth, Defendant argues Plaintiff seeking attorneys' fees bolsters the amount in controversy by at least a further $1,314,537.14, an award of 25% of the damages.  To support their argument, Defendant cites to several cases for support of a 25% or higher attorney fee, but make no attempt to analogize the facts or circumstances of those cases to this one.  Without more, these cases do not support Defendant's allegations as to the appropriate amount of attorneys' fees that may be at issue in this case.  See, e.g., Serran v. Pac. Coast Feather Cushion Co., No. CV 17-4414-DMG (JEMx), 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017) ("Defendants attempt to satisfy their burden by citing cases that supposedly had 'allegations similar to this one' . . . [but] Defendants do not compare the allegations and circumstances of those cases with those of the instant matter.  Thus, Defendants' citation to these cases does not satisfy their burden of showing the amount in controversy through evidence and argument.") (citation omitted).

Moreover, Defendant has failed to meet its evidentiary burden regarding attorneys' fees for purposes of removal because, as noted above, Defendant's calculations of the class recovery are not adequately supported.  See, e.g., Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) (defendant's reliance on 25% benchmark failed because it had "not established by a preponderance of the evidence that the underlying amount upon which those fees would be based [was] at least $4 million, as would be required to meet the $5 million minimum"); Armstrong v. Ruan Transport Co., No. EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at *7 (C.D. Cal. Oct. 25, 2016) ("Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded."); Campbell v. Vitran Express, Inc., No. CV-10-04442-RGK(SHx), 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01588 PA (KKx) | Date | September 30, 2021 |
|---|---|---|---|
| Title | Oscar Bryant v. Midwest Construction Services, Inc., et al. | | |

penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

For the reasons stated above, Defendant has failed to satisfy its burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000 as required for federal jurisdiction under CAFA. This action is hereby remanded to the Superior Court of California, County of San Bernardino, case number CIV SB 2121529, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.